IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:20-cv-00176-WCM

| | |
|---|---|
| NATHAN ALAN VANNOY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION |
| v. ) | AND ORDER |
| ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 16, 19).[1]

## I. Procedural Background

Plaintiff Nathan Alan Vannoy ("Plaintiff") filed applications for disability insurance benefits and supplemental security income, alleging disability beginning October 15, 2011. Transcript of the Administrative Record ("AR") 239-240; 256-262.

On December 24, 2019, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued

---

[1] The parties have consented to the disposition of this matter by a United States Magistrate Judge. Docs. 13,14.

an unfavorable decision. AR 15-32. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "obstructive sleep apnea (OSA) with a history of bariatric surgery, major depressive disorder (MDD), [and] anxiety." AR 20. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: no climbing ladders, ropes or scaffolds; no concentrated exposure to dusts, fumes, odors, gases, poor ventilation; no working at unprotected heights or around unguarded moving machinery; simple, routine tasks; occasional workplace changes; occasional interaction with the general public, coworkers and supervisors.

AR 22.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform certain jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 25-26.

## III. Plaintiff's Allegations of Error

Plaintiff contends that the ALJ, when formulating the RFC, erred in his consideration of Plaintiff's moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating,

2

persisting, or maintaining pace; and adapting or managing himself. Additionally, Plaintiff argues that the ALJ developed his RFC using an improper regulatory framework and failed to include any limitation to address Plaintiff's symptoms stemming from sleep apnea. Finally, Plaintiff asserts that the ALJ erred when evaluating Plaintiff's subjective complaints and failed to resolve an apparent conflict between the jobs identified by the Vocational Expert ("VE") and Plaintiff's abilities.

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial

3

evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

V. Discussion

A. Plaintiff's RFC

1. Plaintiff's Mental Limitations

The ALJ found that Plaintiff had moderate limitations in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. AR 21. Plaintiff argues that the ALJ failed to explain adequately how he accounted for these limitations in Plaintiff's RFC, and that the RFC is not supported by substantial evidence. Doc. 17 at 6-9; see also Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020); Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015); Dennis v. Berryhill, 362 F.Supp.3d 303, 308

4

(W.D.N.C. Jan. 23, 2019) (explaining that courts "have extended the holding in Mascio to require an ALJ to either include restrictions in the RFC arising out of those moderate limitations in social functioning or justify the omissions of such restrictions").

Here, the ALJ determined that Plaintiff had the ability to do "simple, routine tasks," deal with "occasional workplace changes," and interact occasionally with the public, coworkers, and supervisors. AR 22. In developing Plaintiff's RFC, the ALJ relied on the opinions of the state agency psychological consultants, Dr. Nancy Herrera (AR 91-93) and Dr. Sean Sayers (AR 107-110). See AR 25 (ALJ explained that he "simplified the State agency psychological consultants' opinions to be compliant with appropriate residual functional capacity terminology").

Dr. Sayers concluded that Plaintiff's focus might be disrupted when he was feeling stress and pressure, but that Plaintiff remained able to understand and remember "locations, work-like procedures, and simple as well as some complex tasks." AR 108. Additionally, Dr. Sayers stated that Plaintiff could "maintain concentration, persistence, and pace to stay on tasks for 2 hour periods during a typical 8-hour workday, as required to perform simple, routine, repetitive tasks," could interact with the public "on a casual basis," could interact appropriately with coworkers and supervisors, and was

moderately limited in his ability to respond to changes in the work setting. AR 108-109.

Similarly, Dr. Herrera concluded that Plaintiff could understand and remember simple two step instructions and sustain "performance of relatively simple routine repetitive tasks in relatively undemanding work settings that do not require intensive interpersonal relating and that require no more than two hours at the time of maintenance of attention and concentration." AR 92-93.

The ALJ found that these consultants' conclusions were consistent with the medical records through December 31, 2016 (the date on which Plaintiff was last insured for purposes of his disability insurance benefits claim) and "relevant" to Plaintiff's claim for supplemental security income. AR 25. The ALJ additionally noted that Plaintiff had "improved since being sober" and referenced a November 2019 Global Assessment of Function ("GAF") score of 65, which the ALJ explained indicated that Plaintiff "was doing well from a mental health standpoint" Id. (citing AR 569). Finally, the ALJ noted Plaintiff's testimony that he played in the Shriner's band six times a year. Id. (citing AR 68).

The limitations included in Plaintiff's RFC appear to be consistent with the state agency consultants' findings and the rest of the record as analyzed by the ALJ, and the ALJ's reliance on these findings when developing Plaintiff's

6

RFC was appropriate. See Norton v. Saul, 1:20-cv-00060-KDB, 2021 WL 861710, at *3 (W.D.N.C. March 8, 2021); Tanner v. Commissioner of Social Security, 602 Fed. Appx. 95, 101 (4th Cir. 2015) (unpubl.) (while "[a] 'non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted *by all of the other evidence in the record*[,]' 'the testimony of a nonexamining physician can be relied upon when it is consistent with the record.'") (quoting Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) (emphasis in Smith)); see also SSR 96-6p, 1996 WL 374180, at * 2 (July 2, 1996) (state agency consultants "are highly qualified ... physicians and psychologists who are experts in the evaluation of medical issues in disability claims...."); Stamey v. Berryhill, No. 1:18-cv-00062-FDW-DSC, 2019 WL 937331, at *3 (W.D.N.C. Feb. 26, 2019) (citing Settlemyre v. Colvin, No. 5:14–cv–00199–MOC, 2015 WL 5457950, at *4 (W.D.N.C. Sept. 16, 2015); Linares v. Colvin, No. 5:14-cv-00120, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015)).

Plaintiff asserts that certain records show that his mental health symptoms were not controlled and that the ALJ's analysis failed to account for this information. These records, though, do not clearly indicate that Plaintiff's symptoms were uncontrolled. See Doc. 17 at 9 (citing AR 539 (September 10, 2019 record indicating Plaintiff was "doing very well" with his anxiety medication); AR 510 (December 18, 2018 record reflecting treatment for

7

anxiety and insomnia, that Plaintiff was doing well on current meds, and he reported no dizziness, depression, anxiety, or fatigue); AR 513 (September 18, 2018 record indicating no difficulty concentrating, remembering, or making decisions); AR 535 (November 6, 2017 record indicating Plaintiff's anxiety stable with medications); AR 465 (October 26, 2016 record reflecting "no symptoms of depression, anxiety…"); AR 469 (June 23, 2016 record indicating Plaintiff's anxiety improved with medication); AR 471-472 (January 13, 2016 record reflecting no complaints of decreased energy, no symptoms of depression, but an increase in Cymbalta due to complaints of increased anxiety); AR 477-478 (June 16, 2015 record reflecting Plaintiff's chronic anxiety was stable); AR 481 (December 18, 2014 record indicating Plaintiff would be kept on his current antidepressants and a new anxiety medication would be started); AR 484 (July 30, 2014 record indicating Plaintiff was seeking medication refills "after not being in the office in over a year" and complained of anxiety and fatigue); AR 487 (March 4, 2013 record indicating Plaintiff complained of decreased energy but his anxiety was stable); AR 490 (June 24, 2011 record indicating Plaintiff was experiencing increased anxiety due to "legal problems with his divorce, custody, etc."); AR 492 (October 18,

2010 record indicating Plaintiff reported history of anxiety/depression and insomnia).[2]

## 2. Proper Regulatory Framework

"Evaluating an RFC requires an ALJ to consider all of the claimant's physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work." Dowling v. Commissioner of Social Security Administration, 986 F.3d 377, 387 (4th Cir. 2021) (quoting Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019) (quoting Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016)). In Dowling, the Fourth Circuit emphasized that a function-by-function assessment of a claimant's abilities must be based on the correct regulatory framework, i.e., that set forth in 20 C.F.R. §§ 404.1545 and/or 416.945 and SSR 96-8p, 1996 WL 374184 (July 2, 1996).[3]

Pursuant to SSR 96-8p, an ALJ's RFC assessment must include an evaluation of the claimant's ability to perform certain physical and/or mental functions. See also 20 C.F.R. § 404.1545(c) ("A limited ability to carry out

---

[2] Further, it appears most of these records, as well as other records cited by Plaintiff, were reviewed by the state agency psychological consultants. See AR 89; AR 99-101; Doc. 17 at 9 (citing AR 424 & 431 (October 2016 inpatient treatment for alcohol abuse); AR 359 (January 2012 psychiatric evaluation for alcohol dependence)).

[3] 20 C.F.R. § 404.1545 describes the process for evaluating a claimant's physical abilities relative to claims for disability insurance benefits, while 20 C.F.R. § 416.945 sets out an identical process relative to claims for supplemental security income.

9

certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work"); 20 C.F.R. § 416.945(c) (same). Because the ALJ in Dowling failed to cite 20 C.F.R. § 416.945 and SSR 96-8p, "did not indicate that his RFC assessment was rooted in a function-by-function analysis," and instead only conducted an evaluation of the claimant's symptoms (a related, but "separate and distinct inquiry"), remand was ordered. 986 F.3d at 387.

Here, Plaintiff argues that the ALJ failed to base the RFC determination on SSR 96-8p and failed to cite 20 C.F.R. § 416.945 or SSR 96-8p. Doc. 17 at 10. However, the ALJ did reference those regulations, see AR at 20, and, as discussed below, appropriately relied on the state agency consultants' findings to conduct a function-by-function analysis of Plaintiff's limitations.

### 3. Function-by-Function Assessment

An ALJ "may satisfy the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants." Herren v. Colvin, 1:15-cv-2-MOC, 2015 WL 5725903, at *5 (W.D.N.C. Sept. 30, 2015) (collecting cases); see also Stamey v. Berryhill, No. 1:18-cv-00062-FDW-DSC, 2019 WL 937331, at *3 (W.D.N.C. Feb. 26, 2019) (same) (citing Settlemyre v. Colvin, No. 5:14–cv–00199–MOC, 2015 WL 5457950, at *4 (W.D.N.C. Sept. 16, 2015); Linares v. Colvin, No. 5:14-cv-00120, 2015 WL 4389533, at *3 (W.D.N.C.

10

July 17, 2015)). As explained above, the ALJ here relied on the findings of the state agency psychological consultants who did conduct a function-by-function analysis of Plaintiff's mental limitations.

Plaintiff also argues that the ALJ failed to consider his complaints of fatigue and decreased energy stemming from his severe impairment of sleep apnea. Doc. 17 at 12. However, the ALJ cited medical records reflecting that Plaintiff denied problems with energy, reported that he was doing well on his current medications (including taking Ambien for insomnia), and had no difficulty with errands or making decisions. AR 23-24 (citing AR 354; AR 510). Additionally, the ALJ noted that Plaintiff had started using a CPAP machine, that Plaintiff's "very severe OSA…normalized with a CPAP," and that records from March of 2017 indicated Plaintiff was "compliant with his CPAP machine." AR 23 (citing AR 460). Finally, although Plaintiff points to medical records in which he reported that he felt tired or complained of decreased energy, Plaintiff does not identify what additional functional limitations he believes should have been included in his RFC to account for fatigue. See Hendrickson v. Berryhill, No. 1:16-cv-00367-MOC-DLH, 2018 WL 1431751, at *7 (W.D.N.C. Mar. 22, 2018) ("A claimant has the burden to prove the extent of h[er] functional limitations; it is not the ALJ's burden to prove a lack of limitations") (citing Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013)).

## B. Evaluation of Plaintiff's Subjective Complaints

When evaluating a claimant's symptoms, an ALJ must use the two-step framework set forth in 20 C.F.R. §§ 404.1529 and/or 416.929 and SSR 16-3p, 2016 WL 1119029 (March 16, 2016).

First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. See 20 C.F.R. §§ 404.1529(b); 416.929(b); SSR 16-3p, 2016 WL 1119029, at *3.

Second, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. §§ 404.1529(c); 416.929(c); SSR 16-3p, 2016 WL 1119029, at *4. The Fourth Circuit has consistently recognized that "[a]t this step, objective evidence is not required to find the claimant disabled." Arakas v. Commissioner, Social Security Administration, 983 F.3d 83, 95 (4th Cir. 2020).

In evaluating the intensity, persistence and limiting effects of an individual's symptoms, an ALJ is to consider factors such as the individual's medical history, treatment history, and daily activities. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).

In this case, Plaintiff contends that the ALJ discredited his symptoms

based largely on a lack of objective evidence and therefore remand is proper. Doc. 17 at 14. However, a review of the ALJ's decision indicates that the ALJ considered Plaintiff's medical and treatment history, as well as Plaintiff's daily activities and the opinion evidence contained in the administrative record.

### C. Apparent Conflict

During the hearing, the VE identified the occupations of hand packager, warehouse laborer, and floor waxer as examples of "medium, unskilled work" that would be available to a claimant with Plaintiff's RFC. AR 73. The ALJ relied on the occupations of hand packager and floor waxer in finding Plaintiff was not disabled. AR 26. The occupation of hand packager requires level 2 reasoning, which is defined as the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles, DICOT 920.587-018 (G.P.O.), 1991 WL 687916. The occupation of floor waxer requires level 1 reasoning, which is defined as the ability to "apply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DICOT 381.687-034 (G.P.O.), 1991 WL 673262.

Plaintiff contends that there is an apparent conflict between his limitation (as set out in the RFC) to "simple, routine tasks" and occupations requiring a reasoning level of two. Doc. 17 at 17-18. The Fourth Circuit has rejected this argument though. Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019).

Plaintiff also asserts that the VE's testimony that there are 16,000 floor waxer jobs in the national economy indicates that there is not "a significant number" of such positions to carry the Commissioner's burden at step five. See Doc. 17 at 18. Courts, however, have found much smaller numbers of jobs to be significant, and, in any event, since Plaintiff "can perform at least one job that exists in significant numbers in the national economy, the ALJ properly concluded that Plaintiff is not disabled under the Act." Richardson v. Berryhill, 5:17-cv-173-RJC-DSC, 2019 WL 1354042 at * 4 (W.D.N.C. March 25, 2019) (citing Guiton v. Colvin, 546 F. App'x 137, 142 (4th Cir. 2013); see also Hicks v. Califano, 600 F.2d 1048, 1051, n. 2 (4th Cir. 1979) ("We do not think that the approximately 110 jobs testified to by the VE constitute an insignificant number").

Finally, Plaintiff argues that remand is required because the ALJ failed to ask the VE whether there were any conflicts between jobs requiring a reasoning level of two and a limitation to "simple, routine tasks." However, to the extent the ALJ failed to make this inquiry, such error does not require

14

remand. See Edwards v. Berryhill, No. 5:16-cv-00197-RJC, 2018 WL 1176067 at *5 (W.D.N.C. March 6, 2018) ("While ALJs have the affirmative duty to ask the VE if the evidence she produced conflicts with the DOT, a violation of that duty does not always warrant remand. An ALJ commits harmless error when she fails to inquire as to conflicts between the VE testimony and the DOT when no conflict existed in the first place").

## VI. Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Doc. 16) is **DENIED**, the Commissioner's Motion for Summary Judgment (Doc. 19) is **GRANTED**, and this case is **DISMISSED**. The Clerk of Court is respectfully directed to enter a separate judgment in accordance with this Order, thereby closing the case.

Signed: February 4, 2022

W. Carleton Metcalf
United States Magistrate Judge